DOUGLAS LENWELL *v.* STATE OF INDIANA.

[No. 472A175. Filed April 12, 1973.]

*Harriette Bailey Conn* (*Mrs.*), Public Defender of Indiana, *Paul J. Baldoni*, Assistant Public Defender, for appellant.

*Theodore L. Sendak*, Attorney General, *Harry L. Sauce, III*, Deputy Attorney General, for appellee.

LYBROOK, J.—Defendant-appellant (Lenwell) pleaded guilty to Theft by Deception and was sentenced to the Indiana State Prison for not less than one nor more than 10 years.

Approximately one year after his commitment, Lenwell

filed a verified petition to vacate the judgment and withdraw his guilty plea pursuant to Rule PC 1. He was granted leave to proceed as an indigent and a copy of his petition was forwarded to the Public Defender's office.

After an evidentiary hearing, Lenwell's petition was denied. A Motion to Correct Errors was filed and overruled by the court. This appeal follows and the issues presented for review are:

(1) Whether appellant's plea of guilty to the crime of Theft was knowingly and intelligently entered.

(2) Whether the representation afforded appellant by his court-appointed counsel was effective.

The affidavit charged that on December 17, 1969, Lenwell "unlawfully and feloniously obtained by deception, control over the property of Leo Robert Devine." Lenwell was charged with acquiring a 1965 Chevrolet automobile by knowingly delivering a worthless check in the sum of $400.00.

Lenwell was apprehended in Colorado. He waived extradition and was returned for trial in the Parke Circuit Court.

On February 25, 1970, at his arraignment, the court advised him as to the nature of the charge and the penalties, reading both the affidavit and the statute. Lenwell requested a pauper attorney and the court appointed Henry J. Antonini as his counsel.

On the following day Lenwell appeared in person and by his counsel and stated that he was ready to plead to the charge and acknowledged that he had been fully advised as to his rights. He further acknowledged that he had consulted with counsel, desired to plead guilty and that he was doing so knowingly and understandingly. After the required presentence investigation Lenwell was committed to the State Prison.

The record shows that Lenwell was 48 years of age and that he was a skilled medical technician. He had a lengthy prior record involving burglary, vehicle taking, larceny, forgery, and numerous worthless check charges.

At the hearing on his PCR petition, Lenwell presented evidence that he was suffering from hypothyroidism. This condition had been diagnosed about December 18, 1970, some 10 months after he entered his plea. According to the medical testimony this condition is manifested by a loss of mental acuity.

The State argues that the evidence does not establish that appellant was suffering from hypothyroidism on the day he entered his plea. Appellant contends that his ability to make an intelligent decision had been impaired. Appellant's doctor admitted that he had no way of knowing with any degree of medical certainty what appellant's mental or physical condition was on the day he pleaded guilty, but that he would seriously question whether Lenwell was able to make a knowing plea of guilty on February 26, 1970.

The doctor was asked the following hypothetical question:

"Doctor, assuming an individual, now the age of forty-nine, spent most of his adult life in social problems and has pled guilty or been found guilty to over ten to fourteen other offenses of similar nature up to and including 1969, who had this condition that you described that you found some time in 1970, when in your opinion would that man have reached a point that he wouldn't have the mental capacity to know what he was doing?"

He replied:

"That's a question that only *le bon dieu* could answer. It could have started quite a few years back."

Mr. Devine testified that Lenwell seemed alert, articulate, intelligent and reasonable during a two hour conversation concerning the sale of the automobile.

Mrs. Devine testified that during the same conversation, Lenwell was alert, articulate and wide-awake.

The pre-sentence investigation officer testified that when she interviewed Lenwell that he showed no signs of lethargy and answered questions "with a great deal of intelligence." When asked specifically about his health he mentioned only alcoholism and a service connected injury to his elbow.

Defendant's first pauper counsel testified that he observed nothing which would indicate Lenwell was not thoroughly cognizant of his exact position and the consequences thereof.

Finally, appellant's pauper attorney testified that Lenwell wanted to plead guilty and wanted the attorney to see if he could not get a guarantee of psychiatric help at the prison. Antonini testified that Lenwell stated he understood his constitutional rights and indicated that he had had them explained to him many times before.

Appellant argues that a preponderance of the evidence establishes that his plea of guilty was not entered knowingly and intelligently. In our opinion there was sufficient evidence before the trial court to support his finding to the contrary.

Appellant next maintains that the representation afforded him by his court appointed counsel was ineffective. He contends that his attorney conversed with him on three occasions prior to the plea for a total of approximately two hours. He admits that attorney Antonini explained the nature of the charge and the penalty and that he advised his attorney that he wanted to plead guilty if there would be a recommendation of psychiatric treatment upon his commitment. Appellant also charges that Antonini did not conduct an independent investigation into the facts and complains that the representation afforded him was "casual and perfunctory" amounting to inadequate representation.

The State argues that since appellant wanted to plead guilty, that an extensive investigation by his counsel was unnecessary

Each case of this nature must be determined on the basis of its own facts. *Shack* v. *State* (1967), 249 Ind. 67, 231 N.E.2d 36.

When it is apparent to counsel, as it was here, that an educated and intelligent man wants to admit his guilt, an extensive, independent investigation would be superfluous. There would be no purpose in spending many hours in gathering evidence in preparation for a trial which is destined never to take place.

Defendant cites several cases where representation was held inadequate due to a lack of sufficient time for preparation. However, in most of those cases, a trial was actually held, obviously necessitating more preparation time than would a guilty plea.

In *Abraham* v. *State* (1950), 228 Ind. 179, 91 N.E.2d 358, the defendants pleaded guilty to inflicting a physical injury with a deadly weapon in the commission of a robbery and received life imprisonment. The Supreme Court reversed when it appeared that defendants were neither advised of their rights to jury trial, informed as to lesser included offenses, nor asked how their confessions were obtained. The only contact with counsel was limited to 20 minutes in the court room. Obviously, this was not the case here.

Appellant also relies on *Sweet* v. *State* (1954), 233 Ind. 160, 117 N.E.2d 745, wherein our Supreme Court allowed the withdrawal of a guilty plea in a kidnapping case. The court found that due to the severity of the penalty (life imprisonment) and the youth and poverty of the defendant, insufficient time (three days) had been allowed for trial preparation. In addition, however, defendant alleged that his pauper counsel told him that unless he remained silent when his attorney entered the plea of guilty, he would be shot and killed under the pretext of an attempted escape. His fears were reenforced by the presence of armed guards around the court house. The Supreme Court stated:

> "This entire situation, including of course, the meager time given to prepare the defense, clearly indicates that highly improper means were employed to secure the plea of guilty. Adopting as our own the words of Judge Elliott in *Sanders* v. *State* (1882), 85 Ind. 318, at page 330, 'We cannot conceive it possible—possible, we mean, in a legal sense, and under legal principles—that a court, with knowledge that a plea of guilty is forced from a prisoner by fear of death, would imprison him for life without a hearing or trial.' "

The extreme coercion evident in *Sweet* is not even suggested in the case at bar.

We cannot say as a matter of law that Lenwell was denied adequate representation solely because of the brief time spent with counsel.

Under PC 1(5), "The petitioner has the burden of establishing his grounds for relief by a preponderance of the evidence."

However, the law indulges in the presumption that counsel is competent. *Harrison* v. *State* (1973), 155 Ind. App. 231, 292 N.E.2d 612. There is a further presumption that an attorney has discharged his duty fully, and strong and convincing proof is required to overcome this presumption. See, *Conley* v. *State* (1972), 259 Ind. 29, 284 N.E.2d 803, and other authorities cited therein.

It was appellant's burden to come forward with strong and convincing proof of inadequate representation. This he failed to do, as required by *Conley, supra.*

The judgment denying appellant's petition for post conviction relief is affirmed.

Robertson, P.J. and Lowdermilk, J., concur.

NOTE.—Reported at 294 N.E.2d 643.